ANTHONY G. MANGO (AM-4962)
MANGO & IACOVIELLO, LLP
14 Penn Plaza, Suite 2200
New York, New York 10122
212-695-5454
212-695-0797 facsimile

JEFFREY L. LIDDLE (JL-8256)
JAMES R. HUBBARD (JH-3739)
MICHAEL E. GRENERT (MG-2021)
LIDDLE & ROBINSON, L.L.P.
800 Third Avenue
New York, New York 10022
212-687-8500
212-687-1505 facsimile

Attorneys for Plaintiff-Intervenor Majid Borumand



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                          Plaintiff,

       v.

MERRILL LYNCH & CO., INC.,

                          Defendant.
-----------------------------------------------------------------X
MAJID BORUMAND,

                       Plaintiff-Intervenor,

       v.

MERRILL LYNCH & CO., INC.,

                         Defendant.
-----------------------------------------------------------------X

07-Civ-6017 (DAB)
(ECF Case)

COMPLAINT OF
PLAINTIFF-INTERVENOR
MAJID BORUMAND

JURY TRIAL DEMANDED

Plaintiff-Intervenor, Majid Borumand ("Mr. Borumand" or "plaintiff"), as and for his complaint, by his attorneys, Mango & Iacoviello, LLP and Liddle & Robinson, L.L.P., alleges as follows:

## NATURE OF ACTION

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, as amended ("Title VII"), The New York State Human Rights Law, McKinney's Executive Law §§290 *et seq.* ("NYSHRL"), and The New York City Human Rights Law, Administrative Code of the City of New York §§8-101 *et seq.* ("NYCHRL"), for unlawful employment discrimination against plaintiff on the basis of national origin (Iranian) and religion (Muslim), and unlawful retaliation for complaints by plaintiff about such discrimination. As alleged with greater detail herein, Defendant Merrill Lynch & Co., Inc. ("defendant") discriminated against Mr. Borumand by treating him differently than non-Iranian/non-Muslim employees in the terms and conditions of his employment, including his compensation and job title, the location of his work station, and the termination of his employment, which was also in retaliation for his complaints about this unlawful discrimination.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343, conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-5(f)(1) and (3) and §2000e-6 ("Title VII"), and pursuant to Section 102 of The Civil Rights Act of 1991. The Court's supplemental jurisdiction of claims arising under the human rights laws of New York State and New York City is invoked under 28 U.S.C. §1367.

3. Venue herein is proper under 28 U.S.C. §1391(b), and 42 U.S.C. §2000e-5(f)(3) as all acts complained of occurred within the Southern District of New York.

## THE PARTIES

4. Mr. Borumand is a Muslim, Iranian citizen. He has been lawfully present in the United States for approximately seventeen years since 1990, and currently is seeking permanent residency.

5. Defendant, Merrill Lynch & Co., Inc. (hereinafter "Merrill Lynch" or "defendant"), is a Delaware corporation doing business in the Southern District of New York and is subject to the jurisdiction of this Court. Defendant is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), the NYSHRL, and the NYCHRL.

## FACTS

6. In or about January 2002, defendant hired Mr. Borumand as a Vice President Quantitative Analyst (Quant).

7. In or about February 2002, defendant filed an I-129 Petition for a Nonimmigrant Worker on behalf of Mr. Borumand, listing his position as "VP/Quantitative Analyst." In doing so, defendant averred that the duties of a Quantitative Analyst required, at a minimum, a Master's in Mathematics or a similar degree, and that no American was available who met the job requirements.

8. Mr. Borumand holds a Ph.D. degree in Theoretical Physics and a Master's degree in Mathematical Finance from the University of Wisconsin-Madison.

9. Throughout his employment by defendant, Mr. Borumand was subjected to numerous derogatory, discriminatory comments directed at his national origin and religion, which fostered a hostile environment.

10. James Gatheral, a Managing Director and Head of the Quant group for defendant and Mr. Borumand's manager for most of his tenure with defendant, at one point asked Mr. Borumand "Majid, how can we trust you? How do we know that you are a nice guy – maybe you read the Koran and get ideas."

11. On another occasion, Gatheral, while hypothetically discussing who might be cut from the group if necessary, stated the following in the weekly Quant group meetings that Mr. Borumand regularly attended: "Quants are like Israelis and Traders are like Palestinians. There are just so many Palestinians, but Israelis are limited. We cannot afford losing Quants compared to Traders the same way we cannot afford losing Israelis compared to Palestinians."

12. On yet another occasion, when Mr. Borumand questioned his prohibition from the trading floor, he was told, "the reason you are not allowed on the trading floor is because you are from a country that has a high risk factor and is a threat."

13. Mr. Borumand was told by his supervisor, Kishor Laud, that he should not walk around the trading floor because "people get scared nowadays."

14. Another time, Mr. Borumand was told that he was under "scrutiny" because of his national origin, and he overheard two colleagues discussing the fact that there was "sensitivity" with regard to Mr. Borumand's employment with defendant.

15. On another occasion, Mr. Borumand was taunted by a colleague that the "FBI will have you deported" and he was asked, "are you planning to bomb an airplane?"

16. Throughout Mr. Borumand's entire tenure with defendant, defendant unlawfully discriminated against Mr. Borumand on account of his national origin and religion with respect to his compensation, job title, and location of his work station.

17. Throughout Mr. Borumand's entire tenure working for defendant, Mr. Borumand performed Quantitative Analyst work related to the development and enhancement of models for defendant's convertible bond trading activities.

18. Despite the fact that Mr. Borumand was hired by defendant as a Quantitative Analyst and performed the work of a Quantitative Analyst, and that defendant listed his position as 'VP/Quantitative Analyst' in its Petition to the federal government for a work visa for Mr. Borumand and averred that the duties of a Quantitative Analyst required, at a minimum, a Master's in Mathematics or a similar degree, and that no American was available who met the job requirements, defendant internally categorized Mr. Borumand for headcount/payroll purposes as a Senior Programmer (technology worker) in the model/analytics development group of the technology group as a means to try to justify a lower pay grade for him, since technology employees are typically paid substantially less than Quantitative Analysts. Moreover, defendant did not even compensate Mr. Borumand as well as others in the model/analytics development group of the technology group, much less Quantitative Analysts.

19. In late 2003 and early 2004, all of the employees in the model/analytics development group of the technology group who performed similar functions to Mr. Borumand were formally "promoted" to join the Quantitative Analysts (Quant) group. These individuals' work locations were moved to where other Quants were located, and were seated on the trading floor where the traders with whom they worked were located. Despite the fact that these individuals were Mr. Borumand's co-workers and peers, he was the only one who was denied

this formal "promotion." Moreover, Mr. Borumand was prohibited from sitting on the trading floor with his peers, despite the facts that the other Quants were seated on the trading floor and that the work he performed was quantitative analysis related to the work conducted by the convertible bond traders who used his work product on the trading floor. Mr. Borumand was left isolated as the only employee in the model/analytics development group of the technology group other than a recently hired temp/consultant who, unlike Mr. Borumand, did not perform the work of a Quantitative Analyst and had not earned a college degree, much less a Master's and Ph.D. as Mr. Borumand had. Nevertheless, Mr. Borumand continued to perform duties of a convertible bond Quant, and was supervised by, reported to, and had his performance reviewed by the managers of the Quant group.

20. On numerous occasions during Mr. Borumand's tenure with defendant, he complained to his superiors, including but not limited to Laud and Gatheral, about the discriminatory treatment he was subjected to, including defendant's failure to officially categorize him as a Quant for payroll purposes, which had the effect of reducing his income by substantial margins, as well as his work location apart from the other Quants and apart from the traders.

21. However, nothing was done by defendant to rectify the situation. Instead, in response to Mr. Borumand's complaints, he was subjected to continued unequal treatment in the terms and conditions of his employment with defendant, including but not limited to in his compensation and work location and by discriminatory comments.

22. In or about April 2005, Gatheral was replaced by Yoni Epelbaum as Managing Director of the Quant group. Under Epelbaum, an Israeli citizen, defendant's discriminatory treatment of Mr. Borumand continued.

23. Epelbaum refused to speak with Mr. Borumand outside of Quant group meetings, cancelled prescheduled meetings with him, and marginalized and failed to recognize his contributions to the Quant group. For example, during the weekly Quant group meetings in which everyone would report to Epelbaum in alphabetical order, Mr. Borumand would be called upon last even though he was not last alphabetically. There was no justifiable reason for this treatment other than discrimination, and it had the effect of humiliating Mr. Borumand.

24. Mr. Borumand complained to Laud and another supervisor about his treatment by Epelbaum, but was told: "you are barking up the wrong tree. Talk to Yoni [Epelbaum]. Mr. Borumand attempted to communicate with Epelbaum about these issues, but Epelbaum refused to speak with Mr. Borumand about them.

25. Ultimately, on or about June 25, 2005, only about three months after Epelbaum took over as manager of the Quant group, Mr. Borumand was informed that he was being terminated from defendant's employ.

26. Mr. Borumand was told that his position was "eliminated" as part of a "reduction in force," despite the fact that defendant was actually in a hiring phase at the time, actively recruiting Ph.D.s in general and Quantitative Analysts in particular for employment.

27. While defendant terminated the employment of Mr. Borumand, it retained the temp/consultant member of the technology group and made him an official member of the Quant group despite the fact that he did not even have a college degree, much less a Master's degree or Ph.D. as did Mr. Borumand. Mr. Borumand holds a Ph.D. degree in Theoretical Physics and a Master's degree in Mathematical Finance from the University of Wisconsin-Madison.

28. Mr. Borumand complained to defendant's Human Resources department that he believed that the termination of his employment was due to discrimination based on his national origin and religion.

29. Upon information and belief, defendant provided poor references regarding Mr. Borumand to prospective employers in retaliation for his complaints about discrimination.

30. Defendant discriminated against Mr. Borumand on the basis of his national origin, Iranian, and his religion, Muslim in the terms and conditions of his employment, including by making numerous discriminatory comments, failing to pay him compensation equal to that of his peers, make him an official member of the Quant group, and terminating his employment, and retaliated against him for his complaints of discrimination.

31. The unlawful practices complained of above were intentional, and were committed by defendant with malice and/or reckless indifference to Mr. Borumand's legally protected rights of equal employment.

32. On January 6, 2006, Mr. Borumand filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission, a copy of which is annexed hereto as Exhibit 1.

33. After its investigation concluded, the EEOC issued a Determination Letter, on September 12, 2006, finding that "[defendant] subjected [Mr. Borumand] to discrimination based on his race and religion and retaliated against him." A copy of the EEOC's Determination Letter is annexed hereto as Exhibit 2.

34. After attempts by the EEOC to conciliate the matter were unsuccessful, the EEOC filed a Complaint in this Court on June 26, 2007. A copy of the EEOC's complaint is annexed hereto as Exhibit 3.

35. Mr. Borumand has satisfied all administrative filing requirements and prerequisites to the filing of this action pursuant to Title VII, the NYSHRL and NYCHRL, prior to commencing this action.

## FIRST CLAIM FOR RELIEF

### (National Origin Discrimination In Violation Of Title VII)

36. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 35 above.

37. Defendant intentionally discriminated against Mr. Borumand on account of his national origin in violation of Title VII and The Civil Rights Act of 1991, 42 U.S.C. §1981a, as amended (hereinafter "The Civil Rights Act of 1991"), by denying Mr. Borumand equal terms and conditions of employment and by terminating his employment.

38. Defendant's acts of discrimination were performed with malice and reckless indifference to Mr. Borumand's protected civil rights.

39. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

40. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## SECOND CLAIM FOR RELIEF

### (National Origin Discrimination In Violation Of The NYSHRL)

41. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 40 above.

42. Defendant intentionally discriminated against Mr. Borumand on account of his national origin in violation of NYSHRL, McKinney's Executive Law §296(1)(a), by denying him equal terms and conditions of employment and by terminating his employment.

43. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

44. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## THIRD CLAIM FOR RELIEF

### (National Origin Discrimination In Violation Of The NYCHRL)

45. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 44 above.

46. Defendant intentionally discriminated against Mr. Borumand on account of his national origin in violation of NYCHRL, New York City Administrative Code §§8-107 *et seq.*, by denying him equal terms and conditions of employment and by terminating his employment.

47. Defendant's acts of discrimination were performed with malice and reckless indifference to Mr. Borumand's protected civil rights.

48. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

49. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## FOURTH CLAIM FOR RELIEF

### (Religious Discrimination In Violation Of Title VII)

50. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 49 above.

51. Defendant intentionally discriminated against Mr. Borumand on account of his religion in violation of Title VII and The Civil Rights Act of 1991, by denying him equal terms and conditions of employment and by terminating his employment.

52. Defendant's acts of discrimination were performed with malice and reckless indifference to Mr. Borumand's protected civil rights.

53. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

54. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## FIFTH CLAIM FOR RELIEF

### (Religious Discrimination In Violation Of The NYSHRL)

55. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 54 above.

56. Defendant intentionally discriminated against Mr. Borumand on account of his religion in violation of NYSHRL, §296(1)(a), by denying him equal terms and conditions of employment and by terminating his employment.

57. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

58. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## SIXTH CLAIM FOR RELIEF

### (Religious Discrimination In Violation Of The NYCHRL)

59. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 58 above.

60. Defendant intentionally discriminated against Mr. Borumand on account of his religion in violation of NYCHRL, §§8-107 *et seq.*, by denying him equal terms and conditions of employment and by terminating his employment.

61. Defendant's acts of discrimination were performed with malice and reckless indifference to Mr. Borumand's protected civil rights.

62. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

63. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## SEVENTH CLAIM FOR RELIEF

### (Retaliation In Violation Of Title VII)

64. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 63 above.

65. Defendant intentionally discriminated against Mr. Borumand by retaliating against him for his complaints of discriminatory treatment in violation of Title VII and The Civil Rights Act of 1991. Such retaliation took the form of harassment and ultimately the termination of his employment.

66. Defendant's acts of discrimination were performed with malice and reckless indifference to Mr. Borumand's protected civil rights.

67. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

68. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## EIGHTH CLAIM FOR RELIEF

### (Retaliation In Violation Of The NYSHRL)

69. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 68 above.

70. Defendant intentionally discriminated against Mr. Borumand by retaliating against him for his complaints of discriminatory treatment in violation of NYSHRL, §296(1)(e). Such retaliation took the form of harassment and ultimately the termination of his employment.

71. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

72. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## NINTH CLAIM FOR RELIEF

### (Retaliation In Violation Of The NYCHRL)

73. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 72 above.

74. Defendant intentionally discriminated against Mr. Borumand by retaliating against him for his complaints of discriminatory treatment in violation of NYCHRL, §8-107 *et seq.* Such retaliation took the form of harassment and ultimately the termination of his employment.

75. Defendant's acts of discrimination were performed with malice and reckless indifference to Mr. Borumand's protected civil rights.

76. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

77. As a proximate result of defendant's acts of unlawful discrimination, Mr. Borumand has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

### JURY DEMAND

78. Plaintiff demands a jury on all claims stated herein.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff demands judgment as follows:

(a) against defendant under the First, Fourth, and Seventh Claims for Relief under Title VII,

(1) preliminarily and permanently restraining defendant from engaging in the aforementioned conduct;

(2) awarding plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of defendant;

(3) awarding plaintiff reinstatement or front pay;

(4) awarding plaintiff compensatory damages;

(5) awarding plaintiff punitive damages;

    (6) awarding plaintiff reasonable attorneys' fees and costs incurred in this action; and

    (7) awarding plaintiff any other relief this Court deems to be just, equitable and proper; and

  (b) against defendant under the Second, Fifth, and Eighth Claims for Relief under the NYSHRL,

    (1) preliminarily and permanently restraining defendant from engaging in the aforementioned conduct;

    (2) awarding plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of defendant;

    (3) awarding plaintiff reinstatement or front pay;

    (4) awarding plaintiff compensatory damages; and

    (5) awarding plaintiff any other relief this Court deems to be just, equitable and proper; and

  (c) against defendant under the Third, Sixth, and Ninth, and Seventh Claims for Relief under the NYCHRL,

    (1) preliminarily and permanently restraining defendant from engaging in the aforementioned conduct;

    (2) awarding plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of defendant;

   (3) awarding plaintiff reinstatement or front pay;

   (4) awarding plaintiff compensatory damages;

   (5) awarding plaintiff punitive damages;

   (6) awarding plaintiff reasonable attorneys' fees and costs incurred in this action; and

   (7) awarding plaintiff any other relief this Court deems to be just, equitable and proper.

Dated: New York, New York
   September 27, 2007

          Respectfully Submitted,

          MANGO & IACOVIELLO, LLP

     By: _____
          Anthony G. Mango (AM-4962)
          14 Penn Plaza, Suite 2200
          New York, New York 10122
          (212) 695-5454

          LIDDLE & ROBINSON, L.L.P.

     By: _____
          Michael E. Grenert (MG-2021)
          Jeffrey L. Liddle (JL-8256)
          James R. Hubbard (JH-3739)
          800 Third Avenue
          New York, New York 10022
          (212) 687-8500

          Attorneys for Plaintiff Majid Borumand

UNITED STATES DISTRICT CURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,
   v.

MERRILL LYNCH & CO., INC.

        Defendant.
------------------------------------------------------------------
MAJID BORUMAND,

        Plaintiff-Intervenor,
   v.

MERRILL LYNCH & CO., INC.,

        Defendant.
------------------------------------------------------------------ x

07-Civ-6017 (DAB)
(ECF Case)

**AFFIDAVIT OF SERVICE BY MAIL**

The undersigned being duly sworn, deposes and says:

Deponent is not a party to the action, is over 18 years of age and resides at 212 Royal Court, Middletown, NJ 07748.

That on September 27, 2007 deponent served the annexed Complaint Edward Cerasia II, Esq. at Morgan Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060 in the address designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in a post office depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
Da'Veta L. White

Sworn to before me this
27th day of September, 2007

_____
Notary Public

CHRIS SOMER
Notary Public, State of New York
No. 01SO6072200
Qualified in Queens County
Commission Expires April 1, 20 10